JOHN RUGGIERI *vs.* BRISTOL MANUFACTURING CORPORATION.

MARCH 24, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

CONDON, C. J. This is an original petition for compensation under the workmen's compensation act. The cause is here on the petitioner's appeal from a decree of the workmen's compensation commission affirming a decree of the trial commissioner denying and dismissing the petition.

The facts are these. On December 16, 1958 petitioner reported for work at 7 a.m. His job consisted of brushing cement onto rubber heels. About 8 a.m. he complained of severe pains in his chest to the plant nurse. She gave him some medication and he then went home where he was attended by Dr. Paul A. Botelho. After he examined petitioner he diagnosed his condition as a heart attack and arranged for his admission to the Rhode Island Hospital where he was treated by Dr. Irving Beck and Dr. Melvin D. Hoffman. Doctor Hoffman diagnosed his condition as myocardial infarction.

The petitioner claims that his attack was referable to his employment and was precipitated directly as a result of the particular act he was doing when he felt a pain in his chest and broke out in a cold sweat. He testified at the hearing before the trial commissioner that a couple of minutes before the onset of the attack he lifted from the floor to his work table a box of rubber heels which weighed about 30 to 35 pounds. He further testified that he had so informed the plant nurse, Dr. Beck and another doctor at the hospital who took the medical history at the time of his admission.

The plant nurse, Victoria Balzano, testified that she asked petitioner what had happened and that he said he was feeling very ill and gave no history of an industrial injury. She was then asked, "Did he say anything about picking up a box at the time that he suffered this attack?" She answered, "No, not to me." Although petitioner was positive that he told Dr. Beck about picking up the box the doctor could not recall the details of what petitioner might have been doing at the time except that he did say the attack occurred while he was at work, early that morning.

The doctor at the hospital who took petitioner's history was Dr. Hoffman. Such history appears in evidence as respondent's exhibit A and contains no reference to petitioner's lifting a box. It reads " 'Cold' two weeks ago charac-

terized by nocturnal cough and back pains but no chills, fever, malaise, myalgia or expectorations. He did not see his doctor but took cough medicine and rested for two weeks with considerable improvement. He returned to work this A. M. with onset of precordial crushing pain, sweat and shortness of breath. He was seen at home by Dr. Botelho who took an EKG suggesting an acute M. I. He received a quarter-grain of morphine and was transferred to the hospital." Doctor Hoffman also testified that he did not recall specifically that petitioner said anything about picking up a box.

Joseph Borges, a fellow employee, testified for petitioner that he saw him picking up a box and that just as he got it to the table petitioner turned white as a sheet. Borges testified further that the first time he discussed with anyone the matter of petitioner's attack was about three weeks before he testified on July 15, 1959 when he discussed it with Mr. Caldaresso of the local union. However, Eugene T. Reynolds testified on behalf of respondent that he had interviewed Borges on April 23, 1959 about petitioner's attack and that Borges stated to him, "I know nothing of Mr. Ruggieri picking up a box, in fact, I didn't even know him."

Doctor Botelho testified that what petitioner was doing when the attack occurred had a probable relationship to the attack. He testified that petitioner was acutely ill when he attended him, that he asked him a "few brief questions," and that "He stated he had a cold for the last two or three weeks, little cough mostly at night, and that in the morning of—that morning he had gone to work as usual and when he was picking up a box that he described as 50 to 60 pounds, he felt a crushing substernal; I mean, the chest and felt sweaty, white and fainty and was brought home." This is supposed to be what petitioner said, but the doctor had no record of such conversation except a letter to peti-

tioner's attorney which he, Dr. Botelho, wrote on May 9, 1959.

On this state of the evidence the trial commissioner decided that petitioner had failed to prove by a fair preponderance of the credible evidence that he sustained a personal injury arising out of and in the course of his employment and referable thereto. The full commission expressly approved such negative finding and stated in their decision that there was an abundance of testimony and inferences therefrom to support it.

The petitioner contends here that the commission erred and has prosecuted thirteen specific reasons of appeal from the final decree which they entered upon such decision. However, in his brief he has compressed his reasons into three contentions, namely, that such decision and decree are against the law, contrary to the evidence, and based upon a misconstruction of the medical evidence. In the brief and in his oral argument petitioner has not discussed those contentions separately but has more or less merged them into each other to show the error which he claims infects the decision and decree. We shall hereinafter treat them in like manner.

In the first place we must stress the point that petitioner here has the burden of proof. *Bahry* v. *City Fabrics, Inc.,* 80 R. I. 411. He must prove by a fair preponderance of the evidence that he sustained an injury which arose out of and in the course of his employment and was referable thereto. Whether the evidence he has adduced discharged that burden is solely for the commission to decide since by force of the workmen's compensation act their findings of fact are final and conclusive. This includes questions of credibility of the witnesses and the drawing of inferences from evidence, disputed or undisputed. *Parmentier* v. *Moore Fabric Co.,* 71 R. I. 369; *St. Goddard* v. *Potter & Johnson Machine Co.,* 69 R. I. 90.

In the case at bar there is evidence from which the work-

men's compensation commission could have concluded that the testimony of petitioner and his witness Borges was unworthy of belief when they testified that petitioner's attack came while lifting a box. And from the testimony of Doctors Beck and Hoffman and the plant nurse they could likewise reasonably have drawn the inference that petitioner told neither the doctors nor the nurse of any box lifting. As far as Dr. Botelho's testimony is concerned they could have reasonably accorded it little or no weight. In any event whether all the evidence on this point preponderated in favor of petitioner was exclusively for the commission.

In the absence of proof that the lifting of the box occurred at the time of petitioner's attack there is no evidence tending to show a chain of causation between petitioner's work and his heart attack. The medical testimony of Dr. Botelho on this score is the only evidence which petitioner presented and it was of such a nature that it must have weighed very lightly if at all with the commission. We are unable to see wherein there was any misconception by the commission of such testimony. Nor do we understand that they were misled into following an erroneous rule of law requiring medical certainty contrary to *Valente* v. *Bourne Mills*, 77 R. I. 274, or *Emma* v. *A. D. Juilliard & Co.*, 75 R. I. 94, which the petitioner cites. Neither case presented a situation comparable to that in the instant case, especially in view of the element of lack of credibility in the petitioner's testimony and that of his witness Borges. Therefore, we are of the opinion that there is no merit in the petitioner's contentions.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

ON MOTION FOR REARGUMENT.

April 6, 1961.

PER CURIAM. After our decision in the above cause was

filed, the petitioner asked and received permission to present a motion for leave to reargue. Pursuant thereto he has filed such a motion, stating therein certain reasons on which he bases his contention that justice requires a reargument of the case.

We have carefully considered those reasons and are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*Abedon, Michaelson and Stanzler, Julius C. Michaelson,* for petitioner.

*Graham, Reid, Ewing & Stapleton, Edward J. Regan,* for respondent.